UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

AMERISURE INSURANCE COMPANY, a )
Michigan corporation and AMERISURE )
MUTUAL INSURANCE COMPANY, a )
Michigan corporation, )
)
    Plaintiffs, )    CASE No. 9:09-cv-81213-KAM
)
-vs- )
)
ALBANESE POPKIN THE OAKS )
DEVELOPMENT GROUP, L.P., ALAN )
GODDARD and ANNETTE GODDARD, )
)
    Defendants. )
_____)

**PLAINTIFFS' COMBINED REPLY MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT and
RESPONSE IN OPPOSITION TO THE GODDARDS' CROSS-MOTION FOR SUMMARY
JUDGMENT**

    Plaintiffs, AMERISURE INSURANCE COMPANY and AMERISURE MUTUAL INSURANCE COMPANY (herein collectively "Amerisure" or "Plaintiffs") hereby submit their Combined Reply Brief in support of their Motion for Summary Judgment and Response in Opposition to Alan and Annette Goddard's (herein "Goddards") Cross-Motion for Summary Judgment as follows[1].

**I.    INTRODUCTION**

    The plain language of the Amerisure policies and the allegations of the underlying, <u>Goddard</u> Second Amended Complaint (herein "complaint"), warrant: applying the "Total Pollution Exclusion"; finding that any alleged "property damage" manifested outside of the Amerisure policy periods and; ultimately concluding that Amerisure owes no duty to defend or indemnify Albanese

---

[1] Amerisure's Statement of Undisputed Facts filed in connection with its Summary Judgment Motion [D.E. 46] is fully and completely incorporated herein as are the arguments set forth in its reply in support of its summary judgment relating to Albanese Popkin The Oaks Development Group ("Albanese").

in connection with the Goddards' claim. These purely legal issues are ripe for adjudication as the parties do not dispute: (1) that Florida law governs this coverage dispute, Goddards' Response/Cross-Motion ("Rsp."), pg. 7; (2) the allegations contained in the complaint; (3) that the language of the policies is unambiguous, Rsp., pgs. 8; (4) that the unambiguous policy is to be afforded a plain interpretation and enforced as written, Rsp., pg. 7; and (5) that the duty to defend is to be determined solely by comparing the allegations of the complaint with the terms and conditions of the policies, Rsp., pg. 6, 8.  Against this backdrop, the Goddards offer no credible argument as to the application of the facts pled or the interpretation of the policy language to withstand summary judgment.

Indeed, all of the relief sought in the complaint stems entirely from the release of "sulfuric compounds" in the form of gases, fumes and vapors emanating from "Chinese drywall." Florida law qualifies those "sulfuric compounds" as "pollutants" for purposes of applying the Total Pollution Exclusion as contained in the Amerisure policies. The Goddards neither dispute the foregoing, nor the wealth of Florida jurisprudence supporting the application of the exclusion. Instead, they argue that the application of an exception to that exclusion, which, based on the exception's plain language and the actual facts pled, was clearly not contemplated to apply.  Thus, as a matter of law, the Total Pollution Exclusion precludes coverage to Albanese in connection with the Goddard complaint.

Amerisure also requests a finding that its policies are not "triggered" in connection with the Goddards' claim. The Goddards admit the manifestation of the alleged "property damage" relating to "Chinese drywall" occurred more than a year prior to the inception of the Amerisure policies.[2] Thus, the Amerisure policies, in accordance with the undisputed authority, are not implicated by this loss.

---

[2] See Undisputed Statement of Facts (herein "SOF"), ¶ ¶, 13, 14.

Accordingly, for the reasons set forth herein, and as set forth in Amerisure's initial briefing, no genuine issues of material fact warrant delaying or denying Amerisure's motion for summary judgment.

## II. ARGUMENT

### A. The Total Pollution Exclusion Precludes Albanese's Claim for Coverage

The allegations of the complaint, coupled with Florida law, warrant an application of the Total Pollution Exclusion.

#### 1. "Sulfuric Compounds" and "Sulfur Odor" Fall Squarely Within the Definition of "Pollutants"

The Goddards do not contest, let alone address, the well-grounded conclusion that "sulfuric compounds" qualify as "pollutants" for purposes of applying the Total Pollution Exclusion. Thus, this issue is conceded. Even if arguably not conceded, the complaint alleges that "the sulfuric compounds contained within the Chinese drywall . . . released gases, fumes, and/or vapors from the Chinese drywall into the indoor air of the [residence] . . . [resulting] in a sulfur odor" and various other types of alleged property damage.[3] These allegations qualify the "sulfuric compounds" as "pollutants" under the policies as such compounds had "a particular effect commonly thought of as 'irritation' or 'contamination,'"[4] i.e., damage, injury or odor. Nova Cas. Co. v Waserstein, 424 F.Supp.2d 1325, 1334 (S.D. Fla. 2006); Deni Assoc. Inc. v State Farm Fire & Cas. Co., 711 So.2d 1135, 1139 (Fla. 1998). This conclusion is not only firmly steeped in Florida jurisprudence, but also finds support in the recent decision of Travco Ins. Co. v. Ward, Civ. No. 2-10cv14 (D.E.D. Va., June 3, 2010) [D.E. 85] – the only decision to have addressed and concluded that sulfur emissions from Chinese drywall

---

[3] See SOF, ¶¶ 12, 13, 15.
[4] "Irritant" is "an agent by which irritation is produced." Deni, 711 So.2d at 1139. "Contaminate" is defined as to "make impure, infected, corrupt, or radioactive by contact with addition of something . . . ." Nova, 424 F.Supp.2d at 1334-35.

3

are "pollutants," and any "property damage" resulting in whole or in part from exposure thereto is precluded from coverage.

Rather than contest that the sulfur emissions are "pollutants," the Goddards argue that the sulfur odor stemming from the emissions somehow stands separate and apart from the emissions themselves, and caused "property damage" outside of the ambit of the Total Pollution Exclusion. Respectfully, the Goddards misapprehend the policy language and stray from Florida authority. Here, the sulfur "rotten egg" odor not only derives from, and is part and parcel with, the sulfuric compounds, but also clearly has had a "particular effect" on the Goddard residence, i.e., "permeat[ing] a building constitutes physical injury to property." Rsp., pgs. 15-16. Thus, the emissions and concomitant odor qualify as "irritants" or "contaminants" under Florida law, and thus, "pollutants" for purposes of applying the exclusion. See Nova, Deni, et al.

In purported support of their contentions, the Goddards cite Essex Ins. Co. v. Bloomsouth Flooring Corp., 562 F.3d 399 (1st Cir. 2009), Rsp., pg. 16, a holding in which the First Circuit was neither called upon to address what constitutes a "pollutant," nor to interpret a pollution exclusion. Conversely, Florida law clearly qualifies the sulfur emissions and their accompanying odor as "pollutants," and supports the application of the exclusion in this context. See Nova, Deni, et al. Any suggestion to the contrary, particularly on this record, defies logic and reason.[5] Rather, the record before this Court and apposite authority lead to the legal conclusion that sulfuric compounds, including

---

[5] The Goddards' citation to two cases out of the Fifth Circuit and First Circuit, standing for the alleged proposition that the "total pollution exclusion provision does not apply to noxious odors emanating from an insured's building" is inapposite and incorrectly reflect the holdings. First, in Smith v. Reliance Ins. Co., the Fifth Circuit, analyzed Louisiana law and concluded that Louisiana applied the total pollution exclusion strictly to traditional environmental pollution circumstances – in direct contradiction of Florida law, which has adopted a broad and contemporary application of the total pollution exclusion. 807 So.2d 1010 (La. App. 5th Cir. 2002). Second, in Titan Holdings Syndicate, Inc. v. City of Keene, the First Circuit, under New Hampshire law, determined that the pollution exclusion did not apply to "excessive light and noise" as such were not "pollutants" within the policy. 898 F.2d 265 (1st Cir. 1990). These cases clearly do not provide any insight on the application of the Total Pollution Exclusion to Chinese drywall issues.

any resulting odor, released from the Chinese drywall are "pollutants" for purposes of applying the Total Pollution Exclusion.

## 2. **Florida and Other Authority Warrant Applying the Total Pollution Exclusion**

The allegations of the complaint and the plain language of the policies when viewed in the context of Florida authority, warrant the application of the Total Pollution Exclusion. The Goddards have elected not to address the wealth of Florida authority on this issue and have argued that their claim falls within an exception to the exclusion, and thus "resurrects coverage" for Albanese. Rsp., pgs. 8-9. The Goddards' contention is fatally flawed not only from an interpretational standpoint, but also when considered in the context of the unambiguous policy language, the underlying allegations, and Florida's contract construction principles. "[A]n exception to an exclusion in a CGL policy does not create coverage." Auto-Owners Ins. Co. v. Reliance Ins. Co., 227 F. Supp. 2d 1248, 126-64 (M.D. Fla. 2002). Rather, exceptions to exclusions serve to interpret the nature and extent of an exclusion's applicability to a particular loss. Id. In engaging in such an analysis, however, the policy exclusion must first apply. Thus, in confining its analysis to the "Job Site Exception," the Goddards concede the applicability of the Total Pollution Exclusion.

In light of the clear pronouncements of Florida courts on this issue, the tact taken by the Goddards is not surprising. Florida courts have attributed a broad interpretation to pollution exclusions similar to that contained in Amerisure's policies, and have applied such exclusions in connection with a wide variety of non-traditional "pollutants." See Amerisure Memorandum in Support of Summary Judgment, pgs. 5-9; see Deni, 711 So.2d at 1138; Nova, 424 F.Supp.2d at 1334-35; First Specialty Ins. Corp. v. GRS Mgmt. Assoc, Inc., et al., 2009 U.S. Dist. LEXIS 72708 (S.D. Fla. 2009) (Marra, J.). Recently, the United States District Court for the Eastern District of Virginia – the only court to have addressed this exclusion in the context of Chinese drywall emissions – applied the exclusion by

employing reasoning and interpretational standards on all fours with Florida's. See Travco. Travco is instructive and warrants a similar result here as it examined nearly identical exclusion language and concluded that sulfide gasses and/or other toxic chemicals emitted through "off-gassing" were "irritants" and "contaminants," and thus, "pollutants" for purposes of applying the exclusion. While decided under Virginia law, Virginia is aligned with Florida in having adopted a broad, contemporary interpretation of the pollution exclusion. Thus, Travco, Deni, and its progeny support the application of the Total Pollution Exclusion.

### 3. The "Contractor Job Site" Exception Is Inapplicable

Based on the unambiguous policy language and the allegations of the complaint, the "Contractor Job Site" exception is clearly not implicated. This exception relates only to "'bodily injury'[6] or 'property damage' sustained within a building and caused by release of gases, fumes or vapors from materials brought into that building in connection with <u>operations being performed by you</u> [Albanese] . . . ." (emph. added). See SOF, ¶ 19, 20. From its face, the intention of this exception is clear – to except from the ambit of the Total Pollution Exclusion claims resulting from the emission of gases, fumes, or vapors during Albanese's <u>ongoing operations</u>. Any interpretation to the contrary is untenable and unreasonable based on the plain language.

Undeniably, all of Albanese's operations at the Goddard home were completed no later than October, 2006 – the date the Goddards took up residence. See SOF, ¶ 9. In 2008, the Amerisure policies incepted.[7] If sulfur emissions did occur from the time of the construction contract (2004) to the time the Goddards moved into their residence (2006), which has not been pled, they are outside of the policy periods and should be sought from CGL policies in effect at that time.[8] Any claim for "property

---

[6] The complaint fails to assert any allegations constituting "bodily injury" under the policies or for damages as a result of "bodily injury." Thus, claims for "bodily injury" are not at issue in this litigation.
[7] See SOF, ¶ 17, 21.
[8] On information and belief, Albanese procured CGL coverage that was in effect during this period.

6

damage" arising out of Chinese drywall sulfur emissions under the policies, by definition, arises out of Albanese's <u>completed operations</u>, and thus does not, as a matter of law, implicate the "Contractors Job Site" exception or obviate the effect of the Total Pollution Exclusion. (<u>emph. added</u>).

The Goddards do not dispute the foregoing facts or interpretation, but rather contend that conclusory recitations of policy language in an underlying complaint can overcome the intent of the contracting parties and the factual allegations in the complaint. The Goddards, again, run afoul of Florida law. <u>State Farm Fire & Cas. Co. v. Steinberg</u>, 393 F.3d 1226, 1230 (11th Cir. 2004) (citing <u>Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc.</u>, 771 So. 2d 579, 582 (Fla. Dist. Ct. App. 4th Dist. 2000)) ("Conclusory 'buzz words' unsupported by factual allegations are not sufficient to trigger coverage.") The Goddards' references to a single underlying allegation – which verbatim tracks the Contractor Job Site exception language – does not change the actual facts pled or the inescapable result. Moreover, accepting the Goddards' proffered construction would not only amount to a <u>post facto</u> expansion of the Amerisure policy periods, but would also render plain language superfluous. Florida courts abhor such a result. <u>See</u> <u>Taurus Holdings, Inc. v. United States Fid. & Guar. Co.</u>, 913 So. 2d 528, 532 (Fla. 2005) ("[C]ourts may not rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties."). Here, the actual facts pled immutably demonstrate that any claim for "property damage" under the Amerisure policies arises out of Albanese's completed operations, and thus, subject to the Total Pollution Exclusion.

    **4.**    **<u>The Goddards' Discussion of J.S.U.B. and Pozzi Window is of No Moment</u>**

In an effort to obtain what is clearly excluded, the Goddards devote an enormous portion of their response/cross-motion discussing the <u>United States Fire Insurance Company v. J.S.U.B.</u>, 979 So.2d 871 (Fla. 2007) and <u>Auto-Owners Insurance Company v. Pozzi Window Co.</u>, 984 So.2d 1241

7

(Fla. 2008)[9] holdings and the purported application of the products-completed operations hazard coverage and business risk exclusions. Respectfully, had Amerisure denied coverage based on one of the "business risk" exclusions, e.g., "damage to property" and/or "damage to your work," which contain a products-completed operations hazard exception, this discussion likely would have been relevant. As it stands, however, Amerisure neither denied coverage on any of the "business risk" exclusions, nor does its declaratory complaint, or pending motion for summary judgment, seek to adjudicate its coverage obligations on either of these bases. Amerisure, as set forth herein, has declined coverage and summarily moved to adjudicate its contractual obligations based on the application of the "Total Pollution Exclusion," which does not contain a products-completed operations hazard exception, and the "trigger" issue. Thus, the immateriality of the Goddards' argument is axiomatic.

Notably, in neither J.S.U.B. nor Pozzi was the Florida Supreme Court confronted with a similar factual context, nor did the Florida Supreme Court in either case interpret or even address a pollution exclusion or the "trigger" issue. Thus, the Goddards' lengthy recitation is irrelevant and ineffectual in removing Albanese's claim from the ambit of the exclusion or in attempting to place this claim within the Amerisure policy periods. Delving deeper, however, the Goddards' attempt to apply these dissimilar holdings actually validates the application of the Total Pollution exclusion insofar as the Goddards confirm that all "Collateral Damage"[10] damage to the residence was attributable solely to the Chinese drywall's sulfur emissions – statements consistent with the Goddards' allegations in their complaint. Rsp. 14-15. As the Total Pollution Exclusion applies to all "'property damage' which

---

[9] The Goddards also distort the holdings of these opinions.
[10] This is notably a term created by the Goddards and not a term used by the Florida Supreme Court. The Goddards' define the term within their brief as encompassing all alleged damage to property beyond the faulty work or product, which, indisputably would not have occurred but for the emissions from the Chinese drywall.

would not have occurred in whole or in part but for the . . . discharge, dispersal, migration, release or escape of 'pollutants,'"[11] all alleged "Collateral Damage" is clearly excluded under the policies.

### 5. Removal and Replacement Costs Are Precluded Under the Policies

Continuing to ignore the plain language of the Total Pollution Exclusion, the Goddards, devoid of any authority, claim that the "law requires coverage for removal and replacement of drywall." Rsp. 18. While the Goddards may wish it to be so, Florida authority and the policy language clearly warrant otherwise. Initially, the Goddards do not address the verbiage of the Total Pollution exclusion, which bars of coverage for "any loss arising out of [r]equest, demand or order . . . that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of 'pollutants.'" As the Goddards admit that this exclusion is unambiguous, their request for "clean up"and/or "removal" of the Chinese drywall clearly falls within the purview of the exclusion.

Validating this interpretation of the exclusion, the Eleventh Circuit, in <u>James River Insurance Company v. Ground Down Engineering, Inc.</u>, 540 F.3d 1270, 1277 (11th Cir. 2008), confronted and applied similar exclusion language in the context of a claim involving the removal of petroleum drums, contaminated soil and disposing of such at a special waste facility. In construing the nature and scope of the pollution exclusion, the Eleventh Circuit concluded that the exclusion worked to preclude coverage for the "pollution" claim but also any clean-up efforts. <u>James River</u>, 540 F.3d at 1272. Similarly, here, the Goddards seek relief in the form of removal and replacement of the Chinese drywall, which has allegedly caused the contamination of the property. <u>See</u> SOF, ¶¶ 35, 36, 37 and 52.

Florida authority, moreover, indubitably and consistently has held that the removal or replacement of defective work or products, <u>i.e.</u>, removal of the Chinese drywall, does not qualify as "property damage" under a CGL policy. <u>See</u> <u>U.S. Fire Ins. Co. v. J.S.U.B.</u>, 979 So.2d 871, 889-890

---

[11] <u>See</u> SOF, ¶¶ 19, 23,

(Fla. 2007).[12] The Goddards do not address, and thus concedes, the holdings of J.S.U.B. and its progeny, and their application to preclude coverage for any "removal" and/ of "replacement" of the Chinese drywall in connection with any "clean up" or "removal" efforts.

Rather than address the foregoing, the Goddards offer speculation as to what may happen or what might be damaged in the event the Chinese drywall is removed. Such conjecture cannot supplant the allegations of the complaint, nor remove the alleged "Collateral Damage" beyond the ambit of the Total Pollution exclusion. See Higgins v. State Farm Fire and Cas. Co., 894 So.2d 5, 19 (Fla. 2005) ("It is well-settled law in Florida that a liability insurer's obligation to defend a claim made against its insured must be determined solely from the allegations in the complaint."); Deni; Nova; First Specialty.  To support this tenuous assertion, the Goddards cite Bundy Tubing Co. v. Royal Indemnity Co., 298 F.2d 151 (6th Cir. 1962) and St. Paul Fire & Marine Ins. v. Sears Roebuck & Co., 603 F.2d 780 (9th Cir. 1979), two cases which neither addressed the application of a pollution exclusion nor the "trigger" issue. Both cases, notably, support the proposition that removal and replacement costs are not covered under a CGL policy, and that any resulting "property damage" will be precluded where the exclusion's language clearly warrants. Here, by any jurisprudential, contractual or intuitive measure, the removal and cleanup associated with Chinese drywall and resulting "property damage" is clearly excluded under, or otherwise falls outside of, the Amerisure policies.

B.      **The Goddards Improperly Seek Judicial Notice**

In an attempt to divert the Court's attention from the complaint and the applicable policies, the Goddards improperly invite this Court to take judicial notice of findings from an order entered in an unrelated matter. This Court should decline the invitation and disregard the attempt to cloud the record. "[T]aking of judicial notice of facts is, as a matter of evidence law, a highly limited process," due to

---

[12] See also Auto-Owners Ins. Co. v. Pozzi Window Co., 984 So.2d 1241, 1248 (Fla. 2008); West Orange Lumber Co., Inc. v. Indiana Lumbermens Mut. Ins. Co., 898 So.2d 1147, 1148 (Fla. Dist. Ct. App. 2005).

the procedural safeguards guaranteed by the rules of evidence. Shahar v. Bowers, 120 F.3d 211, 214 (11th Cir. 1997). The Goddards claim that certain findings of facts and conclusions of law in Germano, et. al. v. Taishan Gypsum Co, Ltd., et al., In re Chinese Manufactured Drywall Prods. Liab. Litig., 2010 U.S. Dist. LEXIS 34816 (E.D. La. Apr. 8, 2010) possess such resemblance to this action that they should be given preclusive effect. See Doc. 86-pgs 16-17. Despite this unsupported request[13], the Goddards fatally fail to attach the Germano order to the motion, see Fed. R. Evid. 201(d), and fail to inform the Court of the circumstances of that proceeding.

For judicial notice purposes, "[a]djudicative" facts "must be one not subject to reasonable dispute, in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Here, the Goddards seek to notice facts not at issue in this matter. First, the specific excerpts regarding the nature and effects of Chinese drywall are not adjudicative – namely, not relevant to the legal determination of whether an exclusion applies or what the proper trigger mechanism is under specific contractual provisions. See Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC, 369 F.3d 1197, 1204 (11th Cir. 2004) (citation omitted) ("Adjudicative facts are facts that are relevant to a determination of the claims presented in a case.").[14]

Next, assuming this Court is willing to take judicial notice of the Germano findings, it may only do so for the limited purpose of recognizing the judicial act that the order represents or the subject matter of the litigation. United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994) (fact that hearing

---

[13] The Goddards solely cite to In re Agent Orange Prod. Liab. Litig., 996 F.2d 1425 (2d Cir. 1993), an unrelated case regarding removal jurisdiction under the All Writs Act, which has been overruled by the United States Supreme Court in Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 31 (2002).

[14] Indisputability is also a prerequisite for judicial notice, United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994), yet Germano resulted from the defendant's default judgment, which allowed only the plaintiffs to provide expert testimony. The Germano home contained specific drywall and damaged specific property. See Wooden v. Missouri Pacific R.R., 862 F.2d 560, 563 (5th Cir. 1989) (no judicial notice since even application of alleged indisputable facts are disputed). The selected facts, without the appropriate context, are also not generally known; the effects of Chinese drywall are not scientific, historical, and geographical facts. Shahar, 120 F.3d at 214.

11

occurred on certain date was only subject to judicial notice). Dispositive motions, like the Goddards', which asks for notice of sporadic findings asserted in decisions, are not subject to Rule 201. Id.; Al Najjar v. Ashcroft, 257 F.3d 1262, 1283 (11th Cir. 2001) (judicial notice not proper for factual findings or legal conclusions in different proceeding.). Here, the Goddards' attempt to cherry-pick irrelevant facts from an unrelated matter is flawed, contradicts the Rule, and is of no moment to the contract interpretation issues pending before this Court. Jones, 29 F.3d at 1553 (noting the impropriety of taking judicial notice of fact merely because it was found to be true in some other action). Thus, based on the defective form and general impertinence, this Court should decline to take judicial notice of the Germano findings.

## C. The Alleged Damage Clearly Manifested Outside of the Policy Periods

The parties agree that the applicable mechanism under Florida law for determining how a CGL policy is triggered is the initial manifestation of the injury or damage, and what policy is available – namely, the policy on the risk at the time the damage manifests or is discovered. Auto-Owners Ins. Co. v. Travelers Cas. & Surety Co., 227 F.Supp.1248, 1266 (M.D. Fla. 2002); Essex Builders Group Inc. v. Amerisure Ins. Co., 485 F.Supp.2d 1302, 1311 (M.D. Fla. 2002); Assurance Co. of America v. Lucas Waterproofing Co., Inc., 581 F.Supp.2d 1201 (S.D. Fla. 2008); and Rsp., pg. 20.

As has been consistently alleged in three iterations of their complaint, the alleged "property damage" stemming from the Chinese drywall initially manifested itself (and was discovered by the Goddards) "as early as December, 2006" – more than a year prior to the inception of the Amerisure policies. See Complaint, ¶ 38. In seeking to obfuscate this clear allegation, Goddards rely on the allegations of continuing damage throughout 2008 and 2009, yet do not dispute, as they cannot, the allegations of initial manifestation and awareness of the alleged damage stemming from the sulfur emissions in December 2006. The Goddards' attempt to dilute this allegation by asserting that the

majority of the damage manifested and was discovered by the Goddards during the Amerisure policy periods is a thinly veiled, and notably jurisprudentially-barren, attempt to trigger the Amerisure policies. Rsp., pg. 17.  As the parties agree, Florida law does not designate a triggered policy based on proportionality of damage, but rather designates a triggered policy as that being in effect when the damage is initially discovered or manifests. See Auto-Owners Ins.; Essex Builders Group Inc.; Assurance Co. of America. Here, based on the true facts pled in the complaint, Florida law clearly place this loss within the 2006 policy period – outside the boundaries of Amerisure's coverage.

On point and undistinguished by the Goddards is Auto-Owners. There, while the damage stemming from a pipe leak and a concomitant acetone plume occurred before 1991, the damage was alleged to continue beyond that point. In rejecting the surety's continuous trigger argument to place the loss within the post-1991 policies, the court concluded that the "trigger for coverage was when the leaking pipe was discovered. Even if damages continued to occur as the acetone plume continued to expand." Id. at 1268. Thus, because the policies incepted after 1991, they were not implicated. Id.

Here too.  The Goddards, "as early as 2006", discovered damage to seven air handling units and noticed a periodic "sulfur odor." See SOF, ¶ 14. As the initial discovery, or manifestation, of the alleged damage occurred prior to the Amerisure policy periods, the Amerisure policies are not triggered. The Goddards' attempt to expand the trigger period through allegations of "majority of damage" or the alleged "continuous nature" of the alleged damage are untenable, irrelevant and in contravention of Florida authority.

Finally, the Goddards find no refuge in Trizec Properties, Inc. v. Biltmore Constr., Inc., 767 F.2d 810 (11th Cir. 1985). There, the issue was whether the underlying complaint alleged damage prior to the alleged manifestation date to potentially trigger an earlier-in-time carrier's duty to defend. The court did not hold that alleged damage beyond a clear manifestation date continues to trigger

subsequent policy periods. More importantly, that case can be reasonably read to support a finding that the Amerisure policies, incepting more than a year after the alleged, initial manifestation, are not triggered. Based on the complaint, the plain policy language and Florida jurisprudence, the alleged "property damage" manifested outside of the Amerisure policy periods; thus, the policies are not "triggered" in connection with this alleged loss.

**WHEREFORE,** Plaintiffs, Amerisure Insurance Company and Amerisure Mutual Insurance Company, respectfully request that this Honorable Court enter an order in their favor and against Defendants Albanese Popkin The Oaks Development Group, L.P. and Alan and Annette Goddard: granting Amerisure's motion for summary judgment; denying the Goddards' cross-motion for summary judgment; dismissing the Goddards' Counterclaim with prejudice; awarding costs to Amerisure associated with bringing this motion; and for such other relief as this Court deems just and proper.

DATED this 30th day of June, 2010.

                        Respectfully submitted,

                        s/ Josh Levy
                        Josh Levy
                        Lewis Jack, Jr.
                        Florida Bar Number: 162756
                        E-mail: ljack@josephsjack.com
                        Josh Levy
                        Florida Bar Number: 668311
                        E-mail: jlevy@josephsjack.com
                        Josephs Jack
                        P.O. Box 330519
                        Miami, Florida 33233-0519
                        Telephone: (305) 445-3800
                        Fax: (305) 448-5800
                        *Attorneys for Plaintiffs, Amerisure Insurance Company and Amerisure Mutual Insurance Company*

Co-counsel:
Donald E. Elder, admitted *pro hac vice*
E-mail: delder@tresslerllp.com
Zhanna Rondel, admitted *pro hac vice*
E-Mail: zrondel@tresslerllp.com
TRESSLER LLP
233 South Wacker Drive
22nd Floor
Chicago, Illinois 60606-6308
(312) 627-4000

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 30, 2010, the foregoing document is being served on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        JOSEPHS JACK
        Attorneys for Plaintiffs, *Amerisure Insurance Company and Amerisure Mutual Insurance Company*
        Post Office Box 330519
        Miami, FL 33233-0519
        Tel:   (305) 445-3800
        Fax:   (305) 448-5800
        E-mail: jlevy@josephsjack.com

        By: _s/JOSH LEVY_____
            JOSH LEVY
            Florida Bar Number 668311